JACK DUANE BLEVINS, a/k/a JACKIE DUANE BLEVINS *v.* STATE OF MARYLAND

[No. 146, September Term, 1969.]

*Decided February 16, 1970.*

The cause was submitted to MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*James F. Garrity* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County,* and *Julius A. Jodlbauer, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted of storehouse breaking and larceny by a jury in the Circuit Court for Cecil County. Concurrent sentences of ten and twelve years, respectively, were imposed.

The record indicates that Home Owner's Supply Company in North East, Maryland, was burglarized during the early evening of October 17, 1968, and a television set, a radio and a number of rifles and shotguns, valued at approximately six hundred ($600) dollars, were taken.

A fifteen year old girl and her twelve year old sister testified that they saw a youth named Smoky Cantler trying to break into the store by prying off the siding of the building with a pipe and, at the same time, ob-

served appellant in front of the building with a girl who later turned out to be Dolores Todd. According to one of the sisters, from where appellant and the girl were standing they could see Cantler "down the alley" breaking into the building.

A witness, who lived two doors away, testified that although his young son advised him that someone was breaking into the store, he "paid no attention to him" at first, but that later he observed a man and a girl come out of the alley with an armful of guns, place them in the car and drive away with the girl at the wheel. He obtained the license number of the car which proved to be registered in the name of Dolores Todd. As they drove off, he saw another man come out of the alley and then observed the car being driven back to pick the man up.

A service station operator testified that he observed appellant and Dolores Todd, at approximately the same time as the previous witness had observed them, driving away from the front of the building and subsequently pick up Smoky Cantler who was walking up the street.

Later that evening, according to another witness, he met the appellant, Dolores Todd and Cantler at a bar. He was asked by them if he desired to purchase a gun and after some discussion appellant went out to a car, unlocked the trunk and handed the witness a gun stating that it was worth forty dollars. However, according to the witness, he decided to buy another gun which was handed to him by Cantler and that in the course of the negotiations, appellant stated that "they are Rip Gibson's guns" (the owner of the burglarized store). The gun purchased by the witness was later turned over to the police and offered in evidence at trial.

The appellant took the stand and denied any participation in the burglary. He also denied telling the town police officer that: "I didn't rob Gibson. But I know where the guns are at. And you will never get them." The State, thereupon, recalled the town policeman in rebuttal, who was permitted to testify, over objection, that appellant had made such a statement; that it had been

made in the police car after he had arrested appellant, handcuffed him and was taking him to the police station; that appellant, when arrested, was arguing, cussing and kicking; that while in the police car appellant saw an arrest warrant for Dolores Todd lying on the seat and said: "What the hell is wrong with you people? She didn't have nothing to do with it."; and then made the statement which was the subject of his objection.

In this appeal, it is contended that the statement was inadmissible because appellant had not been advised of his so-called "Miranda" rights. The officer testified that because of the appellant's belligerent demeanor, he had not been able to "advise him of his rights under the Miranda warnings" and, in fact, "I couldn't even talk to him." Thus, it is readily apparent that the statement objected to by appellant was not the result of an interrogation by the officer but was an explosive outburst, uttered by appellant without any prodding or inducement of any kind by the officer. Under the circumstances, the statement was clearly an uncompelled, voluntary utterance. By the very terms of the decision in *Miranda v. Arizona*, 384 U. S. 436, the admission of such a statement by an accused, under such circumstances, is not foreclosed by a failure to advise him of his so-called "Miranda" rights. See *Richardson v. State*, 6 Md. App. 448, 452. We find this contention to be without merit.

Nor do we find any merit in the contention that the evidence was legally insufficient to sustain appellant's conviction of burglary. It is evident from the foregoing recital of facts that there was evidence from which the jury could find beyond a reasonable doubt that appellant was a principal participant in the crime.

Finally, it is contended that the sentence imposed by the lower court was excessive. The imposition of sentence in a criminal case is within the discretion of the trial judge and a sentence within the statutory limits will not be disturbed by this Court in the absence of a showing that it was dictated not by a sense of public duty, but by passion, ill will, prejudice or other unworthy motive.

*Love and Matthews v. State,* 6 Md. App. 639, 644; *Minor v. State,* 6 Md. App. 82. Since appellant has made no such showing, his contention is without merit.

· *Judgments affirmed.*